UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEVEN LOBAIDO,

                  Plaintiff,

         - against -

ANDREW M. SAUL,[1] COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-340 (PKC)

PAMELA K. CHEN, United States District Judge:

     Plaintiff Steven Lobaido commenced this action under 42 U.S.C. § 405(g) seeking judicial

review of the decision of the Commissioner of the Social Security Administration ("SSA") denying

his claim for Disability Insurance Benefits ("DIB").  Before the Court are the parties' cross-

motions for judgment on the pleadings.  (Dkts. 11, 14.)  For the reasons set forth below, the Court

grants Plaintiff's motion and denies the Commissioner's cross-motion.  This case is remanded for

further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I.    Procedural History

     On October 20, 2015, Plaintiff filed a Title II application with the SSA for DIB, in which

he alleged he had been disabled as of October 15, 2015.  (Administrative Transcript ("Tr."), Dkt. 6,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019.
Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is automatically substituted
as the Defendant in this action.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public
officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while
the action is pending.  The officer's successor is automatically substituted as a party."); *see also*
42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive
notwithstanding any change in the person occupying the office of Commissioner of Social Security
or any vacancy in such office.").  The Clerk of Court is respectfully directed to update the docket
accordingly.

at 14, 152–53.) His application was denied. (*Id.* at 62–69.) After requesting a hearing (*id.* at 70–71), Plaintiff appeared before Administrative Law Judge Hilton R. Miller ("the ALJ") on March 27, 2018 (*id.* at 27–60). In a decision dated May 2, 2018, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at 11–23.) On December 19, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely[2] filed the instant action.

## II.    The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's]

---

[2] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on December 24, 2018. Plaintiff filed the instant action on January 17, 2019—24 days later. (*See generally* Complaint, Dkt. 1); Fed. R. Civ. P. 6(a)(1)(C).

physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2015 and that Plaintiff suffered from the following severe impairments: "status post lumbar fusion surgery, degenerative disc disease, and lumbar radiculitis.[3]" (Tr. at 16.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 17.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[5] (*Id.* at 18–23.) Qualifying his RFC determination, the ALJ noted that Plaintiff

---

[3] Lumbar radiculitis is defined as "[i]nflammation of the intradural portion of a spinal nerve root prior to its entrance into the intervertebral foramen" or "[i]nflammation of the portion of a spinal nerve root between the intervertebral foramen and the nerve plexus." *Johnson v. Colvin*, No. 13-CV-6319 (CJS), 2014 WL 1394365, at *1 n.3 (W.D.N.Y. Apr. 9, 2014) (internal quotation marks and citations omitted).

[4] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[5] According to the applicable regulations,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or

can occasionally climb ramps or stairs.  He can occasionally balance, crouch, and stoop, but cannot crawl.  [Plaintiff] can occasionally push or pull.  He is capable of frequent reaching and fine and gross manipulation.  [Plaintiff] must be allowed [a] sit and stand option at will.  [Plaintiff] cannot perform work involving hazards such as dangerous machinery.

(*Id.* at 18.)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a bus driver.  (*Id.* at 21–22.)  The ALJ then proceeded to step five.  At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) finish inspector, which has an availability of 15,450 jobs; (2) tester inspector, which has an availability of 101,200 jobs; and (3) cleaner polisher, which has an availability of 26,670 jobs.  (Tr. at 22–23.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (internal

---

wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, brackets, and citation omitted).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (internal quotation marks and citation omitted).  However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) by ignoring a medical expert's opinion that Plaintiff's impairments prevented him from lifting, bending, stooping, squatting, or climbing, and (2) failing to ensure that the record was properly developed.  (Plaintiff's Brief ("Pl.'s Br."), Dkt. 12, at 10–16.)  The Court addresses each argument in turn.[6]

## I.    The ALJ's Reliance on Non-Examining Medical Expert's Opinion

Dr. Henry Urbaniak, a board-certified orthopedic surgeon, testified at Plaintiff's hearing as a non-examining medical expert.  (Tr. at 36–37.)  The ALJ gave "significant weight" to Dr. Urbaniak's opinion that "[Plaintiff] did not meet a listing" because Dr. Urbaniak had "reviewed

---

[6] The ALJ found that Plaintiff's mental impairment, major depressive disorder, was not a severe impairment.  (Tr. at 16.)  However, since Plaintiff does not challenge this determination, the Court does not discuss the ALJ's analysis of Plaintiff's mental impairment.

the entire record and cited to specific evidence in the record that supported his opinion." (*Id.* at

20.) The ALJ also found that Dr. Urbaniak's opinion was

> consistent [with] the December 2015 treatment notes showing full motor strength throughout, normal bulk and tone, and mostly full reflexes. It is also consistent with the [] January 2016 MRI of the lumbar spine showing no significant interval changes compared to the prior April 2012 or the November 2014 x-ray of the lumbar spine . . . . It is also consistent with [Plaintiff's] testimony that he is able to lift his 19-pound grandson occasionally, drive a car, and walk upstairs to his bedroom. It is also consistent with his function report where he stated that he had no problem with his personal care, was able to go out alone, could drive a car, and travel to the homes of his family and friends.

(*Id.* (citations omitted).)

The Court finds that the ALJ's reliance on Dr. Urbaniak's medical opinion was error. "The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)); *see also id.* ("[Medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.") (quoting *Minsky v. Apfel*, 65 F. Supp. 2d 124, 138 (E.D.N.Y. 1999)). Therefore, the ALJ erred in giving Dr. Urbaniak's opinion significant weight.

The ALJ's error is particularly troubling because his description of Dr. Urbaniak's opinion obscures the true nature of Dr. Urbaniak's testimony. At the hearing, though Dr. Urbaniak initially testified that Plaintiff did not meet or equal a listing (Tr. at 37 ("Q: Doctor, does the claimant meet or equal a listing? A: No.")), he soon qualified his conclusion by noting, several times, that he has "limited objective findings to carry on getting [the] information [the ALJ] need[s]" (*id.*; *see also id.* at 37–38 (noting that Plaintiff had an EMG that showed radiculopathy, a positive straight leg raising test, and chronic complaints of back and left leg pain but that this information is "a poor explanation of what's happening")). In fact, Dr. Urbaniak specifically testified that he could not

determine whether any of Plaintiff's impairments were severe because he did not know the extent of Plaintiff's restrictions (*id.* at 38) and did not "have the objective findings to substantiate" the exertional level Plaintiff can work at, *i.e.*, heavy, medium, light, or sedentary (*id.* at 39). Dr. Urbaniak explicitly referred to the lack of objective data in the record as a "problem." (*Id.*)

Plaintiff argues that Dr. Urbaniak did offer a specific opinion as to Plaintiff's RFC that the ALJ ignored. (Pl.'s Br., Dkt. 12, at 10–11.) He relies on Dr. Urbaniak's testimony at the hearing where the doctor stated "[s]o, the RFC would be no lifting, bending, stopping, squatting, climbing, as we understand these are not defined in the record." (Tr. at 38.) However, Dr. Urbaniak qualified this statement by also suggesting that Plaintiff's situation might be different because he previously had surgery. (*Id.* ("So I now have to go and his [sic] opinion based on thinking he had the surgery, but that's not necessarily the same for this gentleman.").) The Court finds that the record is unclear as to whether Dr. Urbaniak was actually providing an opinion as to Plaintiff's RFC or whether he was merely stating, generally, what the considerations would be in order to determine Plaintiff's RFC, *if* Dr. Urbaniak had the proper evidence to rely on. Furthermore, Dr. Urbaniak also testified, in response to a question asking whether he had the "correct information to come to a conclusion" about Plaintiff, that

> the answer is yes and no. There is some data here, but to [do] functional capacity evaluation in some sort, or at least to find something in this record that tell[s] you precisely what he [Plaintiff] could do as opposed to making [a] determination[,] that's not necessarily based on anything in the chart.

(*Id.* at 39–40.) In sum, Dr. Urbaniak's testimony does not provide a sufficient basis for the Court to even determine what his opinion regarding Plaintiff's RFC was.[7]

---

[7] The Court also notes that it is unclear if Dr. Urbaniak's opinion as to whether Plaintiff's impairments meet or equal the Listings is sufficient. Though the doctor testified that Plaintiff does not meet any of the Listings, he also testified that he did not have enough information to determine whether any of Plaintiff's impairments were severe. (Tr. at 37–38.) Given that the ALJ must first

However, that the ALJ did not even mention, much less address, this aspect of Dr. Urbaniak's testimony in his decision is extremely problematic.  (*Cf.* Tr. at 20.)  Given that the doctor himself acknowledged that there was not enough evidence to determine the severity of Plaintiff's impairments or his exertional levels, *i.e.*, the information needed to determine Plaintiff' RFC, and given that the doctor's testimony was generally confusing and unclear, the ALJ plainly erred by giving Dr. Urbaniak's opinion, to the extent he offered one, significant weight.  *See Selian*, 708 F.3d at 421 (holding that "at a minimum, the ALJ likely should have contacted [the doctor] and sought clarification of his report" when that report was "remarkably vague"); *Blau v. Berryhill*, 395 F. Supp. 3d 266, 281–82 (S.D.N.Y. 2019) (noting that an ALJ may not rely on a vague opinions) (collecting cases).

Accordingly, remand is required.  *See Roman*, 2012 WL 4566128, at *17 (noting that remand is warranted when "the ALJ has applied improper legal standards in determining the weights to be assigned to the medical opinion of . . . [*inter alia*,] the opinion of a non-examining medical expert") (collecting cases).

## II.     The ALJ's Duty to Develop the Record

"The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law."  *Rodriguez v. Barnhart,* No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).  Before the Court can determine whether an ALJ's decision is supported by substantial evidence, "the court must

---

determine whether Plaintiff's impairments are severe before he can determine if Plaintiff matches any of the Listings, it is unclear how Dr. Urbaniak could have opined for purposes of step three of this process, when he did not have sufficient information to opine at step two of the process. *See, e.g.*, *Talavera*, 697 F.3d at 151 ("[At the second step], the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations[, *i.e.*, the Listings].") (citation omitted).

first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks, ellipsis, and citation omitted). "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Here, other than Dr. Urbaniak's testimony, the only other medical source the ALJ considered was Plaintiff's treating chiropractor,[8] Dr. James Guariglia. The ALJ afforded "partial weight" to Dr. Guariglia's opinion finding it "consistent with the overall record showing a severe back impairment affect[ing] [Plaintiff's] ability to stand, sit, walk, and lift." (Tr. at 20–21.) However, the ALJ also noted that "no more weight is given because the opinion is narrow as it only addresses [Plaintiff's] ability to work as a bus driver and perform activities of daily living." (*Id.* at 21.) Given that Dr. Urbaniak's opinion cannot constitute substantial evidence and the ALJ's determination that Dr. Guariglia's opinion was too narrow to inform Plaintiff's RFC, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

---

[8] "[B]ecause a chiropractor is not an 'acceptable medical source,' an ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources." *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995)). However, the Second Circuit has "recognized that 'the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him.'" *Monette v. Astrue*, 269 F. App'x 109, 113 (2d Cir. 2008) (summary order) (quoting *Diaz*, 59 F.3d at 313 n.4.)

For example, the record shows that a Dr. Allan Perel, a neurologist, treated Plaintiff in 2015 (Tr. at 250–52), but there is no medical source statement from this doctor. Furthermore, to the extent that there was no other treating source evidence for Plaintiff (*see* Tr. at 35 (noting that in the past year Plaintiff has only seen his chiropractor and a Dr. Ohn; *see also id.* at 21, 293 (noting that Dr. Kyi Kyi Ohn is Plaintiff's psychiatrist)), the ALJ has a duty to develop the record by referring Plaintiff to consultative examiners for examination and a determination of the severity of Plaintiff's impairments and the effect of these impairments on Plaintiff's ability to work. *See Butler v. Astrue*, 926 F. Supp. 2d 466, 478 (N.D.N.Y. 2013) ("If all reasonable efforts to seek information from the treating source fail and re[-]contacting the source is known to be futile, then the hearing officer has a duty to fill the gaps with consultative examinations and more detailed testimony from the claimant."); *Brandow v. Comm'r of Soc. Sec.*, No. 05-CV-917 (NPM) (VEB), 2009 WL 2971543, at *5 (N.D.N.Y. Sept. 11, 2009) ("Even if the ALJ believed further requests to [the treating source] would be futile, her duty to develop [the claimant's] record was not satisfied" because "the ALJ did not fill the evidentiary gaps with a consultative examination.") (internal citations omitted); *see also* 20 C.F.R. § 404.1517 ("If [plaintiff's] medical sources cannot or will not give [the SSA] sufficient medical evidence about [his] impairment for [the SSA] to determine whether [he] [is] disabled or blind, [the SSA] may ask [him] to have one or more physical or mental examinations or tests.")

Here, there were obvious gaps in Plaintiff's medical record that the ALJ failed to attempt to fill. Thus, the ALJ erred by not adequately developing the record before making his RFC determination. *See Moran*, 569 F.3d at 112; *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ

who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

\* \* \*

For the reasons discussed, the Court finds that remand is appropriate to allow the ALJ to fully develop the record and make a proper determination as to Plaintiff's RFC. *Cf. Grosso v. Colvin*, No. 15-CV-8709 (AT) (GWG), 2016 WL 4916968, at \*9 (S.D.N.Y. Sept. 14, 2016) (holding that, even where "the ALJ made extensive efforts to evaluate the conflicts between [the opinion of the claimant's] treating physician . . . and the opinions of consultative examiners," remand was nevertheless appropriate "because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners"), *report and recommendation adopted*, 2016 WL 6269604 (S.D.N.Y. Oct. 25, 2016); *Wilson*, 107 F. Supp. 3d at 407 ("Legal errors regarding the duty to develop the record warrant remand.").

## CONCLUSION

For the reasons stated herein, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
Brooklyn, New York